### ISAAC HARTMAN, Respondent, v. E. P. REED, Appellant.

### No. 3222; October 28, 1874.

**Adverse Possession.—An Owner of Land, After Conveying an Undivided Fraction,** may hold the latter by adverse possession against the grantee, as being included in the term "the whole world."

**Cotenancy—Adverse Possession.—Until the Contrary Appears, the Possession** of one tenant in common is deemed the possession of the other also; it is amicable to him until shown to be hostile, which showing must be, by acts and declarations of the person in possession, brought home to the other.

**Cotenancy — Adverse Possession — Pleading and Evidence.—** When the statute of limitations is relied on by a tenant in possession as against his cotenant, it must, at the trial, be proved by the party so relying that his possession was hostile and not amicable, but in pleading it is sufficient to aver an open, notorious and exclusive possession as against the whole world.

**Statutes.—When Two Legislative Acts are Plainly Repugnant,** not susceptible of being reconciled, the one of the more recent enactment prevails.

**Executors and Administrators—Presenting Judgment Claim.—** The Probate Act, requiring a judgment creditor of the decedent to present his judgment to the administrator as a claim, defeats the provision of the Civil Practice Act, whereby on leave first had from the probate court, if a debtor has died after the recovery of judgment on the debt, execution may issue against the estate.

APPEAL from Seventeenth Judicial District, San Diego County.

A. Brunson for respondent; S. O. Houghton, Glassell, Chapman & Smith, for appellant.

See Hartman v. Reed, 50 Cal. 485.

CROCKETT, J.—This is an action under section 254 of the late Practice Act, to quiet the plaintiff's title to an undivided third of a tract of land in San Diego county. In his complaint he sets out the deraignment of his title from Olvera, the grantee of the Mexican government, to whom the title has been finally confirmed; and then proceeds to state the alleged title of the defendant Reed, and of the administrator of the estate of S. J. Crosby, deceased; and prays, in substance, that certain deeds, under which the defendants claim, be set aside, and that it be adjudged that the defendants have no valid title, and that they be restrained from asserting any claim to the property. The administrator of Crosby filed no answer, and judgment was taken against him by default. Reed answered, and on the hearing the court entered a judgment for the plaintiff, from which, and from the order denying his motion for a new trial, Reed appeals to this court.

Before answering, Reed had filed a general demurrer to the complaint, which was overruled; and this ruling is relied upon as error. The principal point made in support of the demurrer is founded on that portion of the complaint which alleges that in the year 1854 Olvera, under whom both parties claim, conveyed to Crosby by absolute deed one undivided third part of the rancho; and that this conveyance remains in force, never having been annulled or set aside. The complaint then avers that in the year 1869 Olvera conveyed to the plaintiff "the same identical one undivided third part" before then conveyed to Crosby, and which is now claimed by Reed under Crosby. The argument is, that the title to this undivided third being in Crosby, the subsequent deed of Olvera to the plaintiff for the same undivided third was ineffectual to pass any title whatsoever, and that the plaintiff has, therefore, stated himself out of court. But the complaint avers that from the year 1859 to the year 1869 Olvera was in the open, continued, notorious and exclusive occupation and possession of said premises, "holding the same adversely to all

the world.'' If this be true, as it must be assumed to be for the purposes of the demurrer, he had acquired a title under the statute of limitations, which was valid as against his cotenant Crosby, and those claiming under him: Arrington v. Liscom, 34 Cal. 365, 94 Am. Dec. 722.

It is true that, until the contrary appears, the possession of one tenant in common is deemed to be the possession of his cotenant also. The possession is presumed to have been amicable until it is shown to have been hostile; and the fact that it has become hostile must be proved by the acts and declarations of the tenant in possession; nor will even this suffice to put the statute in motion, unless notice of the hostile acts and declarations are brought home to the cotenant out of possession: 3 How. (U. S.) 674, 11 L. Ed. 778, and cases there cited.

When the statute of limitations is relied upon by the tenant in possession, as against a cotenant, the foregoing facts must be proved at the trial, or the claim founded on the statute must fail. But, in pleading, it will be sufficient to aver an open, notorious, exclusive and adverse possession as against the whole world. The averment is broad enough to include an adverse possession as against a cotenant, without alleging also the probative facts, which establish that the possession was adverse. Only ultimate facts need be averred in a pleading, and if the tenant in possession was in the open, notorious, exclusive, adverse possession as against the whole world, his possession must necessarily have been adverse as against his cotenant. This was the ultimate fact to be averred, and the probative fact was, that the tenant out of possession had notice of the adverse holding. The averments of the complaint were, therefore, sufficient to show an adverse possession by Olvera for more than ten years, as against Crosby and those claiming under him, prior to the execution of the deed to the plaintiff. If this be so, Olvera was then the owner of the whole rancho, and his deed to the plaintiff was operative to convey the undivided interest which it purported to convey. The other points raised by the demurrer are untenable, and need not be specially noticed.

The demurrer was properly overruled.

The only title to the land in controversy which Reed claims to hold is derived through a money judgment rendered

against Crosby in his lifetime, and which remained unpaid at the time of his death; and through an execution issued on the judgment, after Crosby died, and a sheriff's sale to Reed in virtue thereof, followed in due time by the sheriff's deed. If this title is worthless Reed has no title to the land either legal or equitable; and if the execution under which he claims was void, it is clear the sheriff's deed is void also. The execution was issued in the year 1861 out of the district court, after permission to that effect had first been obtained from the probate court, in accordance with section 215 of the Probate Act, as it then stood. This section, as it was then in force, was in these words: "Notwithstanding the death of a party after the judgment execution thereon against his property may, upon permission granted by the probate court be issued and executed in the same manner and with the same effect as if he were still living."

The Civil Practice Act, of which this section was a portion, was passed April 29, 1851. Two days thereafter, to wit, on May 1, 1851, the legislature passed the act to regulate the settlement of the estates of deceased persons, section 141 of which is in these words: "When any judgment has been rendered against the testator or intestate in his lifetime, no execution shall issue thereon after his death; but it shall be presented to the executor or administrator as any other claim; but it need not be supported by the affidavit of the claimant; and if justly due and unsatisfied, shall be paid in due course of administration; provided, however, that if the execution shall have been levied upon any property of the deceased, the same may be sold for the satisfaction thereof; and the officer making the sale shall account to the executor or administrator for any surplus in his hands."

Section 215 of the Probate Act, as we have seen, authorized an execution to issue on a money judgment, rendered in the lifetime of the deceased, even though no previous execution had issued or been levied, provided the permission of the probate court was first obtained. But section 141 of the Probate Act explicitly forbids an execution to issue in such a case: Cowell v. Buckelew, 14 Cal. 640. These two provisions are plainly repugnant, and cannot be reconciled; and in such cases the rule is uniform, that the last is deemed to repeal the first, on the ground that, being the latest expression of

the legislative will, it raises a presumption that, in enacting it, the legislature intended to repeal the prior statute to which it is so repugnant that the two cannot stand together.

This is a familiar rule of law. It results that the probate court had no jurisdiction to enter an order authorizing an execution to issue on the judgment against Crosby, and the order was, therefore, void. The execution was also void, because the statute expressly forbids an execution to issue in such a case. This property had not been levied upon under the judgment, during the lifetime of the judgment debtor; and under section 141 of the Probate Act, as we have seen, it could not be seized in execution after his death. The execution being void, the sheriff's deed founded upon it was also void, and Reed acquired no title to the property.

Reed having shown no title, legal or equitable, to the premises in controversy, and the administrator of Crosby not having appealed, it will be our duty to affirm the judgment, provided the claim asserted by Reed was of such a character as to create a cloud upon the plaintiff's title. In the case of Cohen v. Sharpe, 44 Cal. 30, we had occasion to consider with considerable care in what class of cases an adverse claim will amount to a cloud upon the title, and our conclusion was, that when the adverse claim bears upon its face conclusive proof of its own infirmity, so that no evidence aliunde will be needed to refute it, it creates no cloud, and a court of equity will not interfere, for the reason that the plaintiff needs no relief. The court will not do a vain thing, and attempt by a solemn judgment to remove a cloud, when none exists. The authorities on this point are fully collated and examined in the case last referred to.

In this case it is quite clear that both the order of the probate court permitting the execution to issue, and the order of the district court directing it to be issued, were absolutely void on their face, for want of jurisdiction to enter them. Being nullities, they formed no part of the record in the action against S. J. Crosby, and did not impart constructive notice of Crosby's death, or of any fact recited in them. Reed's title rested on the judgment, execution and sheriff's deed, and these, being regular on their face, prima facie conveyed to him whatever title Crosby had at the date of the levy; and as Crosby's title came through regular conveyances

from the grantee of the Mexican government, it was apparently valid. · It required evidence aliunde to show that Reed did not succeed to Crosby's title, and that the execution was void, because it was issued after Crosby's death. The case, therefore, fairly comes fully within the rule; and Reed's adverse claim constituted a cloud upon the title, which the plaintiff was entitled to have removed.

This view of the case renders it unnecessary to examine the other questions discussed by counsel.

Judgment and order affirmed.

We concur: Rhodes, J.; Niles, J.

Wallace, C. J., being disqualified, did not sit in this cause.